IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

3M COMPANY,                                          Case No.: _____

     Plaintiff,

v.

GEFTICO, LLC,

     Defendant.

_____/

## PLAINTIFF 3M COMPANY'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff 3M Company ("Plaintiff" or "3M"), by and through its undersigned counsel, hereby files its Complaint and Demand for Jury Trial against Geftico, LLC ("Defendant" or "Geftico"), and in support hereof, alleges as follows:

## NATURE OF THE ACTION

1.    This action concerns Defendant's fraudulent, deceptive, and otherwise wrongful use of Plaintiff's famous "3M" trademarks to perpetrate a price gouging scheme on unwitting consumers, including government agencies, during the global COVID-19 pandemic.

2.    Defendant has further utilized 3M's trademarks in an attempt to induce consumers into purchasing purported 3M products that do not exist.

3.    Throughout its history, 3M has been providing state-of-the art, industry-leading scientific and medical products to consumers worldwide under its famous 3M marks.  Based on longstanding, continuous use, consumers associate the 3M marks uniquely with 3M.  Now, more than ever, consumers are also relying on the famous 3M

marks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect over the past century. This is especially true with respect to 3M's numerous industry-leading healthcare products and personal protective equipment ("PPE"), including Plaintiff's 3M-brand N95 respirators.

4.      Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19. To assist in the battle against COVID-19, 3M is supplying healthcare workers and other first responders with 3M-brand N95 respirators. For example, in the last week of March 2020, 3M supplied healthcare workers throughout the United States with 10 million of its 3M-brand N95 respirators. 3M also recently announced that it will import 166.5 million of its 3M-brand N95 respirators into the United States in the next three months to supplement its US production, and has invested the capital and resources necessary to double its current annual global production of 1.1 billion respirators. In response to the COVID-19 outbreak and surge in need for N95 respirators, 3M has doubled its global output rate to nearly 100 million respirators per month, and it expects to produce around 50 million respirators per month in the United States by June 2020.

5.      The demand for 3M-branded respirators has grown exponentially in response to the pandemic, and 3M has been committed to seeking to meet this demand while keeping its respirators priced fairly. 3M has not increased the prices that it charges for 3M respirators as a result of the COVID-19 outbreak.

6.      Unfortunately, any number of wrongdoers seek to exploit the current public health emergency and prey on innocent parties through a variety of scams involving 3M

N95 respirators and other products in high demand.  These scams include unlawful price gouging, fake offers, counterfeiting, and other unfair and deceptive practices – all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

7.     In response to fraudulent activity, price gouging and counterfeiting related to N95 respirator masks that has spiked in the marketplace in response to the pandemic, 3M is taking an active role in combating these activities.  3M's actions include working with law enforcement authorities around the world, including the U.S. Attorney General, state Attorneys General and local authorities, and creating a "3M COVID-19 Fraud hotline" for the United States and Canada that end users and purchasers of 3M products can call for information to help detect fraud and avoid counterfeit products.  3M is also publishing information on its website to help inform the purchasing public about 3M's prices and products so that they can avoid fraud.  Further information about 3M's efforts is set forth in the 3M press release and publication attached as hereto as **Exhibits A and B**.  This Complaint is another part of these efforts.

8.     Despite 3M's extensive efforts during COVID-19, unsavory characters continue their quests to take advantage of healthcare workers, first responders, and others in a time of need and trade off the fame of the 3M brand and marks.  Defendant is a prime example of this unlawful behavior.

9.     On or about March 31, 2020, Defendant contacted the Centers for Disease Control and Prevention's ("CDC") COVID-19 Emergency Response Detail with Division of Strategic National Stockpile ("DSNS") with an offer to sell various PPE, including 3M-

brand masks.  Defendant is not an authorized distributor of any of 3M's products and has no right to use 3M's trademarks.  Nonetheless, to confuse and deceive the DSNS into believing that Defendant was an authorized distributor of 3M's products, Defendant reproduced 3M's marks and incorporated them into a PowerPoint presentation provided to the DSNS.  Specifically, Defendant's PowerPoint presentation purports to offer to sell 15 million 3M-brand N95 masks at over 500% above 3M's list price.  This offer constituted price gouging by any measure, including under Section 501.160(2), Florida Statutes.[1]

10.     On or about April 6, 2020, Defendant contacted the DSNS again, this time offering to sell 10 million 3M-brand N95 masks at a price nearly three times 3M's list price.  Then, on April 8, 2020, Defendant contacted DSNS again, offering the same 3M-brand N95 masks for more than triple 3M's list price, falsely stating, among other things, that 3M has raised its prices and 3M required customers to complete a proof of funds letter.

11.     Not only does such price gouging further strain the limited resources available to combat COVID-19, but such conduct justifiably has caused public outrage which threatens imminent and irreparable harm to 3M's brand as Defendant and similar pandemic profiteers promote an improper association between 3M's marks and exploitative pricing behavior.

---

[1] Section 501.160(2), Florida Statutes states, in part:

> Upon a declaration of a state of emergency by the Governor, it is unlawful and a violation of § 501.204 for a person or her or his agent or employee to rent or sell or offer to rent or sell at an unconscionable price within the area for which the state of emergency is declared, any essential commodity including, but not limited to, supplies, services, provisions, or equipment that is necessary for consumption or use as a direct result of the emergency.

Governor Ron DeSantis declared a state of emergency on March 9, 2020. *See* Executive Order 20-52.

12.     3M does not – and will not – tolerate individuals or entities deceptively trading off the fame and goodwill of the 3M brand and marks for personal gain.  This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic, which already has claimed tens of thousands of lives worldwide and nearly 400 lives in Florida.

13.     Accordingly, to further protect governmental actors and consumers from confusion and mistake, to reduce the amount of time and energy that government officials are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M brand and marks' reputation, fame, and goodwill, Plaintiff brings this lawsuit against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and unfair and deceptive trade practices.  Plaintiff also seeks preliminary and permanent injunctive relief.  As described below, any damages, costs, or fees recovered by Plaintiff will be donated to charitable COVID-19 relief efforts.

## PARTIES

14.     Plaintiff 3M Company is a Delaware Corporation, with its principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.

15.     On information and belief, Defendant Geftico, LLC is a Florida limited liability company with its principal place of business at 5418 Split Pine Court, Orlando, Florida 32819.

## JURISDICTION AND VENUE

16.     The claims for federal trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I–IV, *infra*, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely 15 U.S.C. § 1051 *et seq.*  Accordingly, this Court has original and subject-matter jurisdiction over Counts I–IV, pursuant to 28 U.S.C. §§1331, 1338(a), and 15 U.S.C. §1121(a).

17.     The claims for state trademark infringement, false advertising, dilution, unfair competition, and unfair and deceptive trade practices, respectively, asserted in Counts V–VIII, *infra*, arise under Florida statutory and common law, and are so related to the federal claims asserted in Counts I–IV, *infra*, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts V–VIII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

18.     This Court also has diversity jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

19.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District.  Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

20.     Defendant is subject to personal jurisdiction in this District.  Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I. Plaintiff

#### A. 3M

21.     3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world.  Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment.

#### B. The 3M Brand

22.     3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more.  3M also uses its famous "3M Science. Applied to Life" slogan in connection with the promotion of its goods and services.  Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

23.     The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and more.  As such, 3M-branded products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

**C.  The Famous "3M" Marks**

24.     Over the past century, Plaintiff has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the inset 3M design mark (together, the "3M Marks"):



25.     Over the past century, products offered under Plaintiff's 3M Marks have enjoyed enormous commercial success (including, without limitation, its 3M-brand N95 respirator).  Indeed, in 2019, alone, sales of products offered under Plaintiff's 3M Marks exceeded several hundred million USD.

26.     Over the past century, products offered under Plaintiff's 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

27.     Based on the foregoing, the general consuming public associates the 3M Marks uniquely with Plaintiff and recognizes them as identifying Plaintiff as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among the general consuming public in the United States.

28.     To strengthen Plaintiff's common-law rights in and to its famous 3M Marks, Plaintiff has obtained numerous federal trademark registrations, including, without limitation:     (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1,

5, and 10 for, *inter alia*, respirators (the "'534 Registration"); and (iii) U.S. Trademark Reg. No. 5,469,903, which covers the "3M Science. Applied to Life" slogan in a number of Int. Classes, including Int. Class 9 for facial masks and respirators (the "'903 Registration"). *See* **Exhibits C–E**.

29.     The '329, '534, and '903 Registrations are valid, in effect, and on the Principal Trademark Register.

30.     The '329 and '534 Registrations are "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, the '329 and '534 Registrations constitute conclusive evidence of: (i) Plaintiff's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) Plaintiff's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.  Relatedly, the '903 Registration constitutes *prima facie* evidence of: (i) Plaintiff's ownership of the "3M Science. Applied to Life" slogan; (ii) the validity of the "3M Science. Applied to Life" slogan; (iii) the validity of the registration of the "3M Science. Applied to Life" slogan; and (iv) Plaintiff's exclusive right to use the "3M Science. Applied to Life" slogan throughout the United States for, *inter alia*, respirators.

31.     Plaintiff's famous 3M Marks do more than identify Plaintiff as the exclusive source of goods and services offered thereunder.  Indeed, the famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards.  Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the

3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

### D.  Plaintiff's Extensive Efforts to Assist With the Battle Against COVID-19

32.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19.  As Plaintiff states on the homepage of its website, it is "committed to getting personal protective equipment to healthcare workers":



33.     Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are Plaintiff's 3M-brand N95 respirators.

34.     Inset below is an image of Plaintiff's 3M-brand, Model 1860 respirator:



35.     Authentic N95 respirators reduce exposure to airborne biological particles and liquid contamination when used appropriately.

36.     Based on the exponential increase in demand for 3M-brand N95 respirators, Plaintiff has invested the necessary capital and resources to double its global annual production of 1.1 billion 3M-brand N95 respirators.  *See* Exs. A & B.  **But 3M has _not_ increased its prices**.  *See id*.

37.     Unfortunately, certain third parties do not share 3M's sense of civic responsibility during this time of crisis.  Indeed, opportunistic third parties are seeking to exploit the increased demand for Plaintiff's 3M-brand N95 respirators by offering to sell them for exorbitant prices, selling counterfeit versions of them, and accepting money for 3M-brand N95 respirators despite not having the product to sell and/or never intending to deliver the product to the unwitting buyer—in many instances, a public authority, such as the CDC, which struggles to address the enormous financial and logistical challenges presented by COVID-19.

38.     Accordingly, to protect consumers on the front lines of the COVID-19 battle from deception and inferior products, to reduce time wasted by governmental officials on scams, as well as to protect the widespread reputation and goodwill enjoyed by Plaintiff's carefully curated 3M brand, Plaintiff is working diligently with law enforcement, retail partners, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirators.  For example, in late-March 2019, 3M's Chief Executive Officer, Mike Roman, sent a letter to U.S. Attorney General, William Barr, and the President of the National Governors Association, Larry Hogan of Maryland, to offer 3M's partnership in

combatting price gouging.  As shown in the inset image, additional examples of 3M's efforts to combat price gouging, counterfeiting, and other unlawful conduct during COVID-19 include:

    a.  3M posted on its website the list price for its 3M-brand N95 respirators so that consumers can readily identify price gouging (*See* **Exhibit F**);

    b.  3M created a form on its website that consumers can use to report suspected incidents of price gouging and counterfeiting (*See* **Exhibit G**); and

    c.  3M created a fraud "hotline" that consumers can call to report suspect incidents of price gouging and counterfeiting:



## II.   Defendant's Unlawful Conduct

    39.    Despite Plaintiff's extensive measures to combat price gouging and counterfeiting of its 3M-brand N95 respirators, these illicit activities continue.  Defendant is a prime example of this unlawful behavior, which is damaging to the 3M brand and public health.

    40.    On or about March 31, 2020, Defendant sent a PowerPoint presentation titled *masks* (the "<u>Presentation</u>") to Adam W. Lorimer ("<u>Lorimer</u>") of the CDC's Office of

the Assistant Secretary for Preparedness and Response, COVID-19 Emergency Response Detail with DSNS.  *See* **Composite Exhibit H**.

41.     In the Presentation, Defendant offered to sell to DSNS 15 million 3M-brand, N95 Model 1860 respirators for $6.77 each.  *See id.*

42.     The Presentation contains a Technical Data Sheet for the 3M-brand, N95 Model 1860 respirators that Defendant purportedly had for sale.  *See id.*  Plaintiff's famous 3M design mark, and well-known slogan, "3M Science.  Applied to Life," prominently appeared in the upper left-hand corner of the Technical Data Sheet.  *See id.*  Plaintiff's famous 3M design mark also appeared in the bottom of the Technical Data Sheet.  *See id.*  Additionally, Plaintiff's famous standard-character 3M mark appeared in the Technical Specification Sheets.  *See id.*

43.     Defendant's use of the 3M Marks throughout the Presentation was intended to mislead the CDC and DSNS into believing that Defendant was an authorized distributor of Plaintiff's products and/or otherwise had an association or affiliation with Plaintiff and its products.  Defendant is not, and never has been, an authorized distributor or vendor of Plaintiff's products.  Defendant also does not have, and has never had, an association or affiliation with Plaintiff.

44.     The Presentation also falsely states:

> 15 Million Masks 3M Mask ***In USA Currently***
> N95 Model 1860
> $6.77 Per Mask, F.O.B Texas

*See* Ex. H.   Such quantity of 3M-brand, N95 Model 1860 respirators, available to Defendant through 3M or any party associated with 3M does not, and did not exist in Texas on March 31, 2020.

45.     Another equally detestable element of Defendant's unlawful conduct is price gouging.  Defendant's quote of $6.77 per 3M-brand, N95 Model 1860 respirator is more than 500% over 3M's suggested list price of $1.27 per respirator.  *See* Ex. C.

46.     On or about April 6, 2020, Defendant sent another email to Lorimer falsely stating that it had another 10 million 3M-brand, N95 Model 1860 respirators available for $3.60, which were purportedly located in New Jersey.  *See* **Exhibit I**.  Such quantity of 3M-brand, N95 Model 1860 respirators, available to Defendant through 3M or any party associated with 3M, does not, and did not on April 6, 2020, exist in New Jersey.

47.     Defendant's quote of $3.60 per 3M-brand, N95 Model 1860 respirator is almost three times more than 3M's suggested list price of $1.27 per respirator.  *See* Ex. C.

48.     In response, on April 7, 2020, Lorimer requested that Defendant provide the lot numbers for the purported 3M-brand, N95 Model 1860 respirators.  *See* **Exhibit J**.

49.     Minutes later, Defendant responded, "OK no problem, I will ask my vendor for this information."  *See* **Exhibit K**.

50.     Defendant did not provide such information because the 3M-brand, N95 Model 1860 respirators allegedly for sale either do not exist or are counterfeit.

51.     On April 8, 2020, instead of providing the requested information, Defendant responded with more false information contained in an email and an attached Letter of Intent, including, but not limited to, the following:

a.  That a company called "RAF Sourcing . . . is the agent dealing with 3M";

b.  "3M has changed the price several times during the course of the past 2 days.";

c.  "They [3M] are using agents to facilitate the transactions, hence the involvement of RAF Sourcing.";

d.  "The price for the masks is now $3.95.";

e.  "We are told all interested parties can stipulate, as part of their intent, pictures and / or lot numbers.";

f.  That "3M is requiring" a "proof of funds letter."; and

g.  "If you transfer funds and 3M does not live up to the [Letter of Intent], the amount will be refunded by 3M less the bank fees."

*See* **Exhibit L**.

52.     These statements that imply 3M's involvement and that funds will be refunded by 3M are false and likely to mislead and/or deceive a consumer into believing that Defendant is an authorized distributor of 3M products and/or has an association or affiliation with 3M.

53.     Defendant's quote of $3.60 per 3M-brand, N95 Model 1860 respirator is almost triple 3M's suggested list price of $1.27 per respirator.  *See* Ex. C.

54.     The mere association of 3M's valuable brand with such shameless price gouging harms the brand, not to mention its more serious threat to public health agencies that are under strain in the midst of a worldwide pandemic.

55.     Based on the foregoing, Plaintiff seeks relief against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and deceptive acts and business practices.

### CLAIMS FOR RELIEF

### COUNT I

**Trademark Infringement Under Section 32(1) of the
Lanham Act, 15 U.S.C. § 1114(1))
(Infringement of the Federally Registered 3M Marks)**

56.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

57.     Plaintiff brings this Count I under 15 U.S.C. § 1114.

58.     Plaintiff is the exclusive owner of each of the federally registered 3M Marks.

59.     Plaintiff has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand N95 respirators.

60.     Plaintiff's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

61.     Both of the 3M Marks  (i.e., the 3M standard character word mark and the 3M design mark) are fanciful - when used for respirators and, therefore, are inherently distinctive.

62.     Both of the 3M Marks identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

63.     Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, including, for example, in the "letter of intent."

64.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

65.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, is likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

66.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, is likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M or vice versa.

17

67.     Plaintiff has not consented to the use of its famous 3M Marks by Defendant.

68.     Based on Plaintiff's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of Plaintiff's 3M Marks, Defendant had actual and constructive knowledge of Plaintiff's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

69.     Upon information and belief, Defendant adopted and uses the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, fame, and commercial success of products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

70.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of Plaintiff's 3M Marks, to which Defendant is not entitled at law or in equity.

71.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).  Defendant's acts of trademark infringement are willful.

72.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complied of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired

intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

73.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT II

**Unfair Competition, False Endorsement, False Association,
and False Designation of Origin Under Section 43(a)(1)(A)
of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)) (Use of the 3M Marks)**

74.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

75.     Count II is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

76.     Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

77. Upon information and belief, Defendant's use of Plaintiff's famous 3M Marks to advertise, market, offer for sale, and/or sell purported 3M-brand N95 respirators to consumers at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

78. Defendant has also falsely held itself and its affiliates out to be an agent of and/or authorized by Plaintiff to sell and/or distribute 3M-branded products, when this is not the case.

79. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complied of herein, unless restrained by law.

80. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT III

**Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))
(Dilution of the Famous 3M Marks)**

81. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

82. Count III is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

83.     Plaintiff's 3M Marks were famous among the general consuming public before and at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators).

84.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be whittled away.

85.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that famous the 3M Marks' ability to identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators) will be whittled away.

86.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators), will be whittled away.

87.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that Plaintiff's exclusive association with the famous 3M Marks will be blurred.

88.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

89.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

90.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages

and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT IV

**False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))**
**(Defendant's "Letter of Intent")**

91.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

92.     Count IV is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

93.     The statements that Defendant made in its Letter of Intent constitute commercial advertising and/or commercial promotion.

94.     The statements that Defendant made in its Letter of Intent contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendant and/or the products that Defendant allegedly had available for sale.

95.     The statements that Defendant made in its Letter of Intent contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Plaintiff and Plaintiff's 3M-brand products, including, without limitation, Plaintiff's 3M-brand N95 respirators.

96.     Defendant placed its Letter of Intent into interstate commerce by, inter alia, sending it to at least one CDC official's email account, namely, Adam W. Lorimer.

97.     Defendant's Letter of Intent directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm in the form of lost sales (including, without limitation, lost sales of Plaintiff's 3M-brand N95 respirators), as well as irreparable diminution to the 3M brand and 3M Marks' reputation, fame, and goodwill.

98.     Upon information and belief, Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

99.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

100.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT V

### Violation of Florida's Unfair and Deceptive
### Trade Practices Act, § 501.201 *et seq.* ("**FDUTPA**")

101.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

102.    Plaintiff brings this Count V under Section 501.201 *et seq.*, Florida Statutes.

103.    Defendant's wrongful conduct, including unauthorized use of the 3M Marks in the Presentation, with the intent of confusing and misleading consumers, including the CDC and DSNS, that Defendant is an authorized distributor of 3M products, and that Defendant had genuine 3M-brand products for sale, constitutes deceptive trade practices under FDUTPA.

104.    Defendant's wrongful conduct is made even more reprehensible because of Defendant's attempt to exploit a global pandemic for profit, while posing a serious and direct threat to the health and safety of the general public due to the potential misallocation of valuable resources that are necessary to fight the COVID-19 pandemic and protect health care professionals who are risking their own health and safety fighting the pandemic.

105.    Plaintiff has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendant's bad acts and the conduct complained of herein.

106.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VI

### Dilution Under § 495.151, Florida Statutes

107.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

108.     Plaintiff brings this Count VI under Section 495.151, Florida Statutes.

109.     Plaintiff's 3M Marks are indisputably famous.

110.     Plaintiff's 3M Marks were famous at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators.

111.     Defendant's use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators, has, and is likely to continue to, dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be severely diminished.

112.     Defendant's use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators, in connection with Defendant's unlawful price gouging scheme during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks, including, without limitation, Plaintiff's 3M-brand N95 respirators, will be severely diminished.

113.    Defendant's unauthorized and unlawful use of the 3M Marks violates Section 495.151, Florida Statutes.

114.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VII

### Trademark Infringement Under § 495.131, Florida Statutes

115.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

116.    Plaintiff brings this Count VII under Section 495.131, Florida Statutes.

117.    Plaintiff is the exclusive owner of the 3M Marks and the "3M Science. Applied to Life" slogan (the "3M Slogan").

118.    Plaintiff has the exclusive right to use the 3M Marks and the 3M Slogan in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators.

119.    Defendant is unlawfully using the 3M Marks and the 3M Slogan in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, or counterfeits thereof, including, for example, in the Presentation.

120.    Plaintiff has not authorized Defendant to use its famous 3M Marks or the 3M Slogan.

121.   Based on Plaintiff's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of Plaintiff's 3M Marks, Defendant had actual and constructive knowledge of Plaintiff's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

122.   Upon information and belief, Defendant adopted and uses the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, fame, and commercial success of products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

123.   Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of Plaintiff's 3M Marks, to which Defendant is not entitled at law or in equity.

124.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health.  Whereas Plaintiff's corporate values and brand image center around the application of

science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

125. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VIII

### Unfair Competition Under Florida Common Law

126. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 55 above as though fully set forth herein.

127. Plaintiff has the exclusive right to use the 3M Marks and the 3M Slogan in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators.

128. Defendant's use of the 3M Marks and 3M Slogan in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators is likely to confuse consumers, including government agencies, and mislead them into believing that Defendant is associated with Plaintiff, is an authorized distributor for Plaintiff, and/or has available for sale genuine 3M-brand products.

129. Plaintiff has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendant's wrongful conduct.

130.    Plaintiff has no adequate remedy at all.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: April 14, 2020

MCDERMOTT WILL & EMERY LLP

By:    */s/ Joseph M. Wasserkrug*
Joseph M. Wasserkrug
Florida Bar No.: 112274
jwasserkrug@mwe.com
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-4336
T: 305.347.6501 | F: 305.675.8403

Michael W. Weaver
Illinois Bar No.: 6291021
*(Application for admission pro hac vice forthcoming)*
mweaver@mwe.com
444 W. Lake Street, Suite 4000
Chicago, IL 60606-0029
T: 312.984.5820 | F: 312.277.2972