UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**3M COMPANY,**

        **Plaintiff,**

v().                                    Case No:  6:20-cv-648-Orl-41GJK

**GEFTICO, LLC,**

        **Defendant.**

                                    /

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 11). As set forth below, a temporary restraining order ("TRO") will be granted, and ruling on the preliminary injunction will be deferred.

**I.   BACKGROUND**

Plaintiff produces, among other things, medical devices and personal protective equipment ("PPE") including their 3M-brand N95 respirators. (Compl., Doc 1, ¶ 4; Crist Decl., Doc 13, at 2–3). Plaintiff has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products under the standard character mark "3M." (Doc. 1 ¶ 24; Doc. 13 at 3). Plaintiff has also obtained numerous federal trademark registrations for its 3M Marks that are valid, in effect, and incontestable. (Doc. 1 ¶¶ 28–30; Doc. 13 at 3–4; U.S. Trademark Registration No. 3,398,329 ("'329 Registration"), Doc. 13-4, at 2–3; '329 Registration Notice of Acceptance and Acknowledgment, Doc. 13-5, at 2); U.S. Trademark Registration No. 2,793,534 ("'534 Registration"), Doc. 13-6, at 2–3; '534 Registration Notice of Acceptance and Acknowledgment, Doc. 13-7, at 2; U.S. Trademark Registration No. 5,469,903 ("'903 Registration"), Doc. 13-8, at

2–3). At issue here, is the unauthorized use of Plaintiff's 3M Marks in connection with Plaintiff's product, the N95 respirator mask. (*See generally* Doc. 1).

Plaintiff alleges that Defendant, during the current COVID-19 global pandemic,[1] has unlawfully and in violation of Plaintiff's Marks attempted to sell to the Center for Disease Control ("CDC") 3M-brand N95 respirator masks that either do not exist or are fraudulently made and that Defendant is doing so at elevated prices, constituting price gouging. (*Id.* ¶¶ 40–50). In Defendant's attempt to sell masks to the CDC, "Defendant sent a PowerPoint presentation titled *masks*" to the CDC, which offered to sell to the CDC 3M-brand N95 masks and which contained the Technical Data Sheet for the 3M-brand masks with Plaintiff's 3M Mark and slogan. (Doc. 1 ¶ 40; Doc. 13 at 5–6; *see generally* Mar. 31, 2020 Email and Presentation from Def. to CDC, Doc. 12-7). Defendants also sent several emails falsely claiming to have 3M masks for sale and that 3M had changed its prices. (Doc. 12-7 at 1; Apr. 6, 2020 Email from Def. to CDC, Doc. 12-8, at 2–3; Apr. 8, 2020 Email from Def. to CDC, Doc. 12-11, at 2; *see* Stobbie Decl., Doc. 12, ¶ 4 (stating "3M has **not** increased the prices" of the 3M N95 respirator masks during this pandemic) (emphasis in original)). Plaintiff alleges that it has no relationship with Defendant nor is Defendant an authorized distributor or vendor of Plaintiff's products. (Doc. 1 ¶ 43; Doc. 13 at 6). Thus, Plaintiff alleges that Defendant is not only violating its trademarks unlawfully but is also attempting to defraud the CDC as well as the American public. (Doc. 11 at 8–9, 21). Plaintiff alleges that this conduct harms Plaintiff's goodwill in the midst of this global pandemic and is a threat to public

---

[1] "Coronavirus disease 2019 (COVID-19) is a respiratory illness that can spread from person to person." Centers for Disease Control and Prevention, CS 314937-A, *What you need to know about coronavirus disease 2019 (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/communication/factsheets.html (Mar. 20, 2020). *See also In re: Coronavirus Public Emergency*, No. 6:20-cv-17 (M.D. Fla. Mar. 18, 2020) (citing COVID-19 and outlining response procedures for Court proceedings in the Middle District of Florida); Orlando Division Protocol for Proceedings During COVID-19 Directives (M.D. Fla. Mar. 18, 2020) (same).

health agencies should they, or anyone else, purchase a product that may be counterfeit and below quality control standards. (Doc. 1 ¶ 54; Doc. 11 at 9; Doc. 13 at 9).

Plaintiff seeks a TRO as well as a preliminary injunction that would enjoin Defendant from: (1) "using any of the 3M Marks . . . in commerce;" (2) "holding itself out to consumers and/or the public as an authorized distributor or vendor of the 3M-brand products, or holding itself out as having any affiliation, connection, or association with 3M in any way;" (3) falsely representing that 3M has increased the prices of 3M-brand N95 respirators as a result of the COVID-19 crisis or that 3M has required or authorized others to increase the prices of 3M-brand N95 respirators as a result of the COVID-19 crisis;" and (4) "offering to sell any of 3M's products at a price and/or in a manner that would constitute a violation of § 501.160(2), Florida Statutes." (Doc. 11 at 1).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(b), a district court may issue a temporary restraining order "without written or oral notice to the adverse party" if the requesting party provides "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." To obtain a temporary restraining order, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Additionally, the moving party must establish that a temporary restraining order is necessary "to maintain the status quo until the requisite notice may be given and an opportunity is afforded to opposing parties to respond to the application for a preliminary

injunction." M.D. Fla. R. 4.05(a). "[Temporary restraining] orders will be entered only in emergency cases." *Id.*

### III. ANALYSIS

Plaintiff has established that it is entitled to the entry of the requested TRO.

The Complaint brings various claims against Defendant related to Defendant's alleged trademark infringement, false endorsement, trademark dilution, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as claims for alleged violation of Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, dilution and trademark infringement under Florida's Trademarks Act, Fla. Stat. § 495.001 *et seq.*, and unfair competition under Florida common law. (*See generally* Doc. 1). Based on the evidence discussed above, Plaintiff has established a likelihood of success on the merits. Also based on those filings, it is clear that irreparable injury will be suffered if Plaintiff's goodwill is injured due to Defendant's price gouging and sale of either fraudulent PPE that is either below industry quality standards or that does not exist. Further, the Court places specific importance on the fact that if these fraudulent masks are sold, the public—likely healthcare workers—may be given PPE that is faulty, and therefore, expose them to COVID-19 and put their lives at risk. That potential harm obviously constitutes irreparable harm to 3M's goodwill, but especially to the public. And, keeping that possibility from occurring, at least until the Court has the opportunity to further address these issues, outweighs any potential harm to Defendant and is certainly serving the public interest.

The Court notes that it does have certain misgivings about whether Plaintiff met its burden regarding the propriety of ex parte relief here. The TRO's argument regarding ex parte relief constitutes only one paragraph and contains no explanation as to why notice and a hearing would be impractical. M.D. Fla. R. 4.05(b)(2) (noting that to obtain such emergency, ex parte relief,

Plaintiff must explain why notice and a hearing would be "impractical if not impossible."). However, in light of the COVID-19 global pandemic and the harm that could occur should fraudulent masks be introduced by Defendant into the public, the Court finds that a TRO is necessary here. Accordingly, while the Court concludes that a TRO in this case is permissible, the Court will set an expedited schedule regarding service and the preliminary injunction hearing to ensure sufficient ability for Defendant to be heard on the matter.

Additionally, given the short timeframe that the TRO will be in place before the Defendant is able to be heard, the Court will only require a $10,000.00 bond at this time.

### IV.    CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 11) is **GRANTED in part** and **DEFERRED in part**. To the Extent that Plaintiff seeks a Temporary Restraining Order, the Motion is granted; the Court defers ruling on the request for preliminary injunction.

2. Defendant and all persons acting on behalf of Defendant are hereby **IMMEDIATELY ENJOINED** from using any of the 3M Marks in commerce.

3. Defendant and all persons acting on behalf of Defendant are hereby **IMMEDIATELY ENJOINED** from holding themselves out to consumers and/or the public as authorized distributors or vendors of 3M-brand products, or holding themselves out as having any affiliation, connection, or association with 3M in any way.

4. Defendant and all persons acting on behalf of Defendant are hereby **IMMEDIATELY ENJOINED** from falsely representing that 3M has increased

the prices of 3M-brand N95 respirators as a result of the COVID-19 crisis or that 3M has required or authorized others to increase the prices of 3M-brand N95 respirators as a result of the COVID-19 crisis.

5. Defendant and all persons acting on behalf of Defendant are hereby **IMMEDIATELY ENJOINED** from offering to sell any of 3M's products at a price and/or in an unfair or deceptive manner.

6. **On or before May 4, 2020**, Plaintiff shall serve Defendants with the Complaint, the Motion for Temporary Restraining Order and Preliminary Injunction, and this Order.

7. Plaintiff and Defendant shall appear for an evidentiary hearing on the Motion for Preliminary Injunction on **May 7, 2020, at 1:30 p.m.** in Courtroom 5B, George C. Young United States Courthouse Annex, 401 W. Central Boulevard, Orlando, Florida before the Honorable Carlos E Mendoza. Defendant need not file a written response to the Motion and may rely on oral argument. **Defendant is on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction without further notice**.

8. This Order is conditioned on the posting by Plaintiffs of a surety bond in the sum of $10,000.00, **on or before 2 PM, Monday, May 4, 2020**.

9. This Order shall remain in effect for fourteen days unless dissolved or extended for good cause by this Court.

**DONE** and **ORDERED** in Orlando, Florida on April 30, 2020.



Copies furnished to:

Counsel of Record